# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PETER M. BERNEGGER,

        Plaintiff,

    v.                                Case No. 07-C-1028

WASHINGTON MUTUAL, F.A., et al,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PETER M. BERNEGGER,

        Plaintiff,

    v.                                Case No. 08-C-0335

JAY J. PITNER,

        Defendant.

## DECISION AND ORDER

Plaintiff Peter M. Bernegger filed this pro se lawsuit against several financial institutions and their attorneys asserting claims for fraudulent and negligent misrepresentation, mail fraud, defamation, unjust enrichment, abuse of process, deprivation of his constitutional rights, and violations of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601, *et seq*., and Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. A previous decision and order granting in part a motion to dismiss disposed of most of Bernegger's claims. Bernegger also stipulated to dismissal of BanCorp South and its attorney, and voluntarily dismissed against other defendants. He has also filed a separate action against a new defendant, however, which I have consolidated.

Presently before the Court are two separate motions for leave to file an amended complaint, a motion to reconsider my previous decision, and several separate motions to dismiss. For the reasons set forth below, the motions for leave to file an amended complaint and for reconsideration will be denied. The motion to dismiss Defendant O'Dess and Associates SC, which was only named in the proposed complaint, will be denied as moot. The motion to dismiss the separate complaint against Defendant Jay Pitner in Case No. 08-C-0335 will be granted. The motion to dismiss the remaining claims in Case No. 07-C-1028 will be granted, but only in part. The motion will be granted as to Defendant Washington Mutual for insufficiency of service of process. And although the motion will be granted in part as to Bernegger's FDCPA claim, a portion of the claim will remain, at least for now, against Defendants Gray & Associates, L.L.P., and Zablocki.

## BACKGROUND

In 2006, Defendant Washington Mutual ("WaMu"), through its attorneys at Gray & Associates, L.L.P. ("Gray"), brought an action in Wisconsin state court to foreclose upon a mortgage on a residential lot and home owned by Bernegger, and located in New London, Wisconsin.[1] (Am. Compl. 07-1028 ¶ 5.)[2] After Bernegger failed to file an answer or other responsive pleading in the foreclosure proceeding, the state court entered default judgment of foreclosure in the amount of $200,781.24 on July 24, 2006. (*Washington Mutual Bank v.*

---

[1] Although he did not reside there at the time the foreclosure proceeding was commenced, Bernegger claims the home has since become his personal residence.

[2] All court documents referenced in the remainder of this decision are those originally filed in case 07-C-1028, unless otherwise specified.

2

*Bernegger*, No. 06-CV-224, Waupaca County Cir. Ct., Order July 24, 2006.)[3]  At a sheriff's sale held November 28, 2006, WaMu purchased the property for $313,510.34.  (Am. Compl. ¶ 6.) Thereafter, the Defendants filed an application for confirmation of the sale and supporting documents, but Bernegger then filed for bankruptcy, and the automatic stay provision of 11 U.S.C. § 362 took effect.  The bankruptcy proceeding was later dismissed on May 30, 2007, and a hearing on the confirmation of the sheriff's sale was rescheduled.  (Am. Compl. ¶ 6.)  However, when Bernegger filed for bankruptcy a second time on June 28, 2007, (Am. Compl. ¶ 9) the state court confirmation proceedings were again automatically stayed.

On August 29, 2007, Defendant Jay Pitner, an attorney at Gray, filed a motion in the bankruptcy proceeding on WaMu's behalf, requesting that the court lift the stay pursuant to 11 U.S.C. § 362(d), and order the trustee to abandon the property pursuant to § 554(b).  (Am. Compl., Ex. B1-B2.)  In the motion, the Defendants stated that "the total amount due to the movant is approximately $195,234.70, which may substantially exceed the encumbered property's value. Accordingly, the property is burdensome or of inconsequential value and benefit to the estate . . . ." (Am. Compl., Ex. B-1, ¶ 4.)  The motion also stated that Bernegger's failure to make monthly mortgage payments in accordance with his proposed plan had resulted in post-petition arrearage of $3,354.36, including $800.00 in attorneys' fees and costs.  (Am. Compl., Ex. B-2, ¶ 2.)  This, the Defendants claimed, was cause to lift the stay.

On October 11th, pursuant to an agreement between the parties, the bankruptcy court ordered that Bernegger pay $4,631.54 to WaMu in sufficient time to be received on or before

---

[3] The Court may take judicial notice of matters of public record, including court orders, without converting the outstanding motions to dismiss into motions for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

3

October 31, 2007.  If the payment were made, the stay was to remain in effect.  If not, the Defendants would be free to submit an affidavit of default and a proposed order for immediate relief from the stay for the court's signature.  (*In re Bernegger*, Ch. 13 Case No. 07-24994-MDM, U.S. Bankruptcy Ct. E.D. Wis., Order October 11, 2007.)  No payment was made.  Therefore, on November 16, 2007, the Defendants filed another motion for relief, and on November 30th, the bankruptcy court lifted the stay.  (*Id*., Order November 30, 2007.)  According to the Defendants, the bankruptcy court approved their fees and costs in association with their motion for relief "[w]ithout objection or appeal from the plaintiff."  (Br. Supp. Mot. to Dismiss 4.)  On April 11, 2008, the bankruptcy court denied a motion by Bernegger requesting that the court reconsider its order granting WaMu relief from the automatic stay, in which Bernegger had argued that WaMu had undervalued his property in its previous motion for relief.  (Order April 11, 2008, 07-24994-MDM.) The bankruptcy court explained that the value of the property had no effect on the court's decision to lift the stay, which was based upon Bernegger's failure to make the payment previously agreed upon by the parties and ordered by the court. (*Id*.)

The automatic stay having been lifted, a hearing was then held on February 7, 2008 in the state court foreclosure action regarding the Defendants' motion to confirm the sheriff's sale.  On February 20th, the state court, finding there was a valid concern as to whether fair value was given for the property, ordered that a new sheriff's sale be held.  This second sheriff's sale took place on May 13, 2008, and the sale was confirmed on June 6, 2008.  (Br. Opp. Second Mot. Amend, Dkt. # 68, at 1.)

Meanwhile, on November 20, 2007, Bernegger commenced the two actions now consolidated in this case (see Dkt. # 59) in federal court, alleging that the Defendants' filings in

4

support of their motions in the state and bankruptcy courts were fraudulent, or at least negligent, misrepresentations, and violations of the United States Constitution, the CCPA and the FDCPA. In addition, he alleges that the Defendants violated the FDCPA by contacting him through unauthorized parties despite their knowledge that he was represented by counsel.

## ANALYSIS

### I. Bernegger's Request to Dismiss Defendant E-Trade

Bernegger has requested that the Court dismiss his claims against Defendant E-Trade Bank. (First Mot. to Am. Compl., Dkt. # 17, ¶ 5.) Under Federal Rule of Civil Procedure 41(a)(1)(A)(i), a plaintiff may voluntarily dismiss a claim as a matter of right where notice of dismissal is filed before the opposing party serves either an answer or a motion for summary judgment. *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 143 (7th Cir. 1978). Defendant E-Trade has not yet filed an answer or any motion in this case. Therefore, Bernegger's remaining claims against E-Trade will be dismissed without prejudice.

### II. Bernegger's Motions to Further Amend his Complaint

Bernegger has also filed two motions for leave to file a second amended complaint. The most recent, filed June 10, 2008, requests that the Court permit him to "add these pleadings to the existing ones." (Dkt. # 56, 1.) Although he cites Local Rule 15.1 within this motion "to amend and add to" his pleadings, and despite the fact that he has been previously advised by the Court that any attempts to amend his pleadings must comply with that rule, Bernegger's June 10 motion to amend is not accompanied by a proposed amended pleading. Thus, Bernegger has failed to comply with

5

the requirement of Local Rule 15.1 that he include with his motion a proposed document reproducing the entire pleading as amended. The rule explicitly forbids what he requests: the incorporation of a prior pleading by reference. Therefore, Bernegger's June 10 motion to amend will be denied.

On June 3, 2008, Bernegger filed a motion for leave to amend his complaint with which he did submit a proposed amended pleading in compliance with Local Rule 15.1. However, this motion will also be denied. By his motion, Bernegger seeks to add as parties to this case attorneys Terry Gray and Michael Riley, the law firm of O'Dess & Associates, S.C. ("O'Dess"), and Fidelity National Information Services, Inc. ("Fidelity"), a provider of mortgage loan processing software and other information products for financial institutions. However, his proposed amended complaint fails to state a claim against any of these proposed additional defendants. There is no mention whatsoever of Michael Riley within the allegations of the proposed complaint. References to a former attorney at Gray, Michael End, merely state that he left the firm when he became aware of illegal activity there. The only mention of Terry Gray, also of Gray & Associates, states that he resigned from the Wisconsin Bar. Bernegger alleges that O'Dess was a bidder at the sheriff's sales of his property, and at one point provided legal services to WaMu. He claims that WaMu, upon filing its foreclosure complaint in state court, provided as its address the location of a regional office of Fidelity, and claims that Fidelity lacked standing to file a foreclosure against his property. None of these allegations states a cognizable claim before this Court.

Bernegger's June 3 proposed amended complaint also attempts to assert new claims against the existing Defendants. The proposed complaint claims that the Defendants have violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, but gives no indication of the basis for this assertion. Such

6

a conclusory allegation fails to state a claim even under the liberal standards of notice pleading.[4] The proposed complaint also contains an allegation that the Defendants violated the Wisconsin Consumer Act governing debt collection, Wis. Stat. Section 472.103, *et. seq*., by harassing Bernegger's relative when they submitted evidence regarding his relative's home to the state court during the foreclosure proceedings. With his proposed complaint, Bernegger has attached a portion of a transcript from a state court proceeding in which his attorney in that action informed the court that a witness for the state court plaintiffs had appraised the wrong property—a home neighboring Bernegger's, which was apparently owned by his relative, Gary Bernegger. It seems doubtful to the Court that the submission of that evidence violated the Wisconsin Consumer Act, but, more importantly, the Court has no reason to believe from his allegations that Bernegger would have standing to assert such a claim on behalf of his relative in any event.

The remainder of the proposed complaint reiterates the allegations contained in Bernegger's first amended complaint of January 7, 2008. Because his proposed amendments fail to state any additional claims against any existing or additional Defendants, it is apparent that Bernegger's proposed amendments would be futile. Accordingly, his June 3 motion to amend will be denied. *See J.D. Marshall Int'l v. Redstart, Inc*., 935 F.2d 815, 820 (7th Cir. 1991) (holding that leave to amend may be denied if the proposed amendment would be futile). Bernegger's amended complaint

---

[4] Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In addition, Rule 8(e)(1) states that "[e]ach averment of a pleading be simple, concise and direct." "The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merchant Services, Inc*., 20 F.3d 771, 775 (7th Cir. 1994) (citations omitted).

Case 1:07-cv-01028-WCG   Filed 10/24/08   Page 7 of 30   Document 81

of January 7, 2008 (Dkt. # 6) in case 07-C-1028, and his April 22, 2008 complaint in case 08 C-0335 remain the operative complaints in this matter.

Putative Defendant O'Dess has filed a motion to dismiss the claims asserted against it in Bernegger's June 3 proposed amended complaint, in which Bernegger sought to add O'Dess as a party to this action. However, because Bernegger's motion for leave to file the proposed second amended complaint will be denied, there are no claims presently pending against O'Dess, and its motion to dismiss will be denied as moot.

Defendants have raised additional concerns that Bernegger's proposed amendments to his complaint were undertaken in bad faith. (Response to Mot. to Amend., Dkt. # 68.) Of course, even if proposed amendments are not futile, a motion to amend a complaint may be denied where undertaken in bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend may be denied when there is "undue delay, bad faith or dilatory motive on the part of the movant.") But here, Defendants make a broader claim that because the motion was undertaken for purposes of harassment, Bernegger's entire lawsuit should be dismissed, and the Defendants awarded attorneys' fees. (Response to Mot. to Amend, Dkt. # 68, at 6.) Under the FDCPA, the Court may award attorneys' fees to a prevailing defendant upon a finding that the lawsuit "was brought in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k(a)(3). The Seventh Circuit has stated, however, that the statute requires that the "entire lawsuit," not just a certain claim, be brought in bad faith and for harassment purposes. *Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769, 775 (7th Cir. 2003). An award is not justified, for example, where a plaintiff prevails on some claims and has colorable arguments on the claims on which he did not prevail. *Id*. In light of this standard, I find that to award attorneys' fees under Section 1692k(a)(3) in this case based

8

solely upon Bernegger's recent motions to amend would be inappropriate and premature. The Defendants may renew their request for fees in the future, however, if they are able to demonstrate the impropriety of Bernegger's suit as a whole.

### III. Bernegger's Motion for Reconsideration

Bernegger has filed a motion seeking reconsideration of the Court's March 3, 2008 dismissal of counts one, two, three, five, six, seven and eight of his amended complaint for failure to state claims upon which relief may be granted. As it relates to the remaining Defendants, the order dismissed Bernegger's claims of negligent and intentional misrepresentation on the basis of the immunity available to witnesses and litigants for their statements in the course of judicial proceedings, and dismissed Bernegger's claims that the Defendants violated his constitutional rights, because no state action was alleged. Bernegger contends that there are two instances of error that should persuade the Court to alter its previous decision. First, Bernegger argues, the Court erred in dismissing his claims of constitutional violations, because by alleging the misconduct of attorneys, who are officers of the Court, he sufficiently alleged prohibited state action. Second, Bernegger claims that the Court should reinstate his misrepresentation claims because debt collectors are not entitled to the absolute immunity ordinarily afforded to witnesses and litigants for their statements in connection with judicial proceedings.

A motion to reconsider pursuant to Rule 59(e) allows courts to correct manifest errors of fact or law clearly established by the moving party. *FDIC v. Meyer*, 781 F.2d 1260, 1286 (7th Cir. 1986). A court should grant a Rule 59(e) motion if it determines that it previously misapplied the facts or law. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Because I conclude

9

the dismissal of these claims was not in error, Bernegger's motion for reconsideration will be denied.

### A. Constitutional Violations (Counts Six and Eight)

Bernegger claims that the Court erred in dismissing his claims that the Defendants acted in violation of the Constitution. The Court dismissed his claims under 42 U.S.C. § 1983, because they alleged wholly private conduct. Bernegger now argues that by asserting claims against attorneys he alleged state action. (Mot. for Recons. ¶ 6.) Although he claims that an attorney acting as an officer of the Court is engaged in state action sufficient to support a claim under 42 U.S.C. § 1983, this contention is without merit. "It is often said that lawyers are 'officers of the court.' But the Courts of Appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981); *see Logan v. Laterzo*, 2001 WL 1497777 (7th Cir. 2001); *Russell v. Devereaux*, 2008 WL 217129, *4 (E.D. Wis. 2008). Therefore, Bernegger's motion to reconsider will be denied as to the dismissal of his claims that the Defendants violated his constitutional rights.

### B. Misrepresentation Claims (Counts One, Two, Three, and Five)

Bernegger also claims that the Court erred in dismissing his claims that the Defendants made intentional and negligent misrepresentations in their filings before the state and bankruptcy courts.[5]

---

[5] To the extent Bernegger alleges that by these actions the Defendants violated the federal mail fraud statute, 18 U.S.C. § 1341, that claim clearly fails. It is well established that there is no private cause of action under the statute. *Mondry v. American Family Mut. Ins. Co.*, 2006 WL 2787867, *5 (W.D. Wis. 2006) (collecting cases); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178-79 (6th Cir. 1979).

10

(Am. Compl. ¶ 16.)  The Court previously dismissed his misrepresentation claims as barred by the immunity afforded to witnesses, attorneys and litigants under Wisconsin law for their statements during judicial proceedings, citing the Wisconsin Supreme Court's holding in *Bergman v. Hupy*, 64 Wis. 2d 747, 749-51, 221 N.W.2d 898, 900-01 (Wis. 1974), that "[s]tatements made during judicial proceedings and quasi-judicial proceedings are absolutely privileged when the statements bear a proper relationship to the issue, i.e., are relevant to the proceeding."  (Order, March 3, 2008, Dkt. # 15 at 5.)

Bernegger now argues that "[d]efendants who are acting as debt collectors do not in fact have this immunity."  (Mot. for Recons. ¶ 1.)  In support of this argument, Bernegger cites *Todd v. Weltman*, 434 F.3d 432 (6th Cir. 2006), in which the Sixth Circuit Court of Appeals held that a law firm was not entitled to absolute immunity from liability under the FDCPA for its statements in an affidavit filed on behalf of its client in a state court garnishment action.  Bernegger also directs the Court's attention to *Sayyed v. Wolpoff*, 485 F.3d 226 (4th Cir. 2007), in which the Fourth Circuit Court of Appeals held that the FDCPA does not provide for common law litigation immunity, as the scope of liability and immunity are defined entirely by its comprehensive statutory scheme.  Neither case, however, persuades me to reinstate Bernegger's common law misrepresentation claims in the instant action.

The Court's March 3, 2008 Order, which Bernegger now challenges, did not dismiss Bernegger's FDCPA claims.  The cases Bernegger cites address whether common law litigation or witness immunity may bar a claim under the FDCPA.  Neither case stands for the proposition that such immunity is unavailable with regard to ordinary common law tort claims of misrepresentation.  To the extent Bernegger asserts that no such immunity is available to attorneys, (Am. Compl. ¶ 2)

11

his argument is directly contradicted by Wisconsin caselaw. *Bromund v. Holt*, 24 Wis. 2d 336, 342, 129 N.W.2d 149, 152 (Wis. 1964) ("Parties *and counsel* are immune from liability for relevant statements in pleadings and otherwise in the course of judicial proceedings.") (emphasis added); *Snow v. Koeppl*, 159 Wis. 2d 77, 80-81, 464 N.W.2d 215, 216 (Wis. App.1990) ("The rule extends to attorneys, witnesses and physicians appointed to examine a person in connection with judicial proceedings."). Bernegger further contends that no immunity is available to the Defendants for their misrepresentations to the state court as to the value of his property, when the Defendants' valuation was actually based on evidence concerning Bernegger's neighbor's property. He claims that evidence regarding his neighbor's property was not relevant to the proceeding, and the Defendants are therefore not entitled to immunity. (Mot. for Recons. ¶ 4.) But the relevant inquiry is not whether the evidence upon which the Defendants relied in making their statements turned out to be accurate, but whether their statements themselves were relevant to the proceeding. Statements as to the value of Bernegger's property, however erroneous, were relevant to the state court foreclosure action. Therefore, Bernegger's motion for reconsideration will be denied as to his misrepresentation claims as well.

For the reasons stated above, those of Bernegger's claims against Jay Pitner, an attorney at Gray, that allege constitutional violations and common law misrepresentations in connection with the Defendants' motion for relief from the automatic stay in the bankruptcy proceeding will also be dismissed.[6]

---

[6] Bernegger originally asserted these claims against Pitner in case 08-C-0335, which was consolidated with case 07-C-1028 on June 11, 2008, after the Court, by its order of March 3, 2008 had already dismissed Bernegger's constitutional and misrepresentation claims against the other Defendants.

## IV. Motions to Dismiss by Defendants WaMu, Gray, Zablocki and Pitner

Also pending before the Court are motions to dismiss Bernegger's remaining claims by Defendants WaMu, Gray, Pitner, and Steven Zablocki, another attorney at Gray. The Defendants contend that the Rooker-Feldman doctrine and the principle of claim preclusion bar these remaining claims against them, which allege unjust enrichment and violations of the FDCPA. The Defendants assert that in any event, all claims against WaMu should be dismissed for lack of adequate service.[7] Because I conclude that certain of Bernegger's FDCPA claims are not so barred, these motions will be granted in part and denied in part.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Yet "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007) (citing 5 Wright & Miller § 1216, at 233-234); *see also Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)

---

[7] The Defendants also assert that all FDCPA claims against WaMu should be dismissed because at all times relevant, WaMu was attempting to collect its own debt, and was therefore not subject to the FDCPA. However, while it is true that creditors attempting to collect their own debts generally are not considered debt collectors under the FDCPA, *see Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002), this is an evidentiary issue not properly addressed in a motion to dismiss. Furthermore, there are some actions a creditor may not undertake for the purposes of collecting its own debt without subjecting itself to the FDCPA as a debt collector. *Id.* (holding that when a creditor used another name in its debt collection efforts to suggest third party's involvement in such efforts, the creditor qualified as "debt collector" for purposes of FDCPA liability).

13

(Posner, J., sitting by designation) ("Some threshold of plausibility must be crossed at the outset . . . ."). In ruling on a motion to dismiss under Rule 12(b)(6), a court views all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991).

### A. Unjust Enrichment Claim

Bernegger's claim for unjust enrichment alleges that Gray and Zablocki overcharged for legal services and submitted falsified legal bills to the courts, which have been "added to [his] total." (Am. Compl. ¶ 39.) He claims the Defendants were unjustly enriched by the fees awarded to them by both the state and bankruptcy courts.

Included in the state court's judgment of foreclosure were attorneys' fees in the amount of $1,100.00. (Order July 24, 2006, 06-CV-224.) Even if, as Bernegger alleges, this amount was improper, his injury was not complete until the entry of the court order. Thus, to the extent he challenges this award, his claim amounts to a direct challenge to the validity of the state court's judgment, and is barred under the Rooker-Feldman doctrine.

Named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983), the doctrine articulates the rule that lower federal courts lack subject matter jurisdiction to hear claims seeking review of state court judgments, because "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment."

14

*Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002).[8]  As the Supreme Court recently clarified, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  Under the doctrine,

> Claims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry.  However, federal claims presented to the district court that were not raised in state court or that do not on their face require review of a state court's decision may still be subject to Rooker-Feldman if those claims are "inextricably intertwined" with a state court judgment.

*Taylor v. Federal Nat. Mortg. Ass'n*, 374 F.3d 529, 532-33 (7th Cir. 2004).

In order to determine whether claims are "inextricably intertwined" with a state court judgment, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) (holding plaintiffs' claim that a village undertook a condemnation proceeding for retaliatory purposes was barred by Rooker-Feldman because "the injury alleged was only complete when the state court actually condemned the property."); *see GASH Associates v. Village of Rosemont, Ill.*, 995 F.2d 726 (7th Cir. 1993) (holding that a civil rights suit against the winning bidder at a foreclosure sale was directed at the state court

---

[8] Bernegger contends that the Rooker-Feldman doctrine only prevents a federal court from reviewing the decisions of the highest state court, not those of lower state courts.  However, the Seventh Circuit Court of Appeals has explained that although the doctrine recognizes the U.S. Supreme Court's authority to review only the final decisions of the highest state court in which they could be had, "it does not follow that decisions by a lower state court are reviewable in federal courts.  No statute authorizes such review, and it would be grotesque to allow a disappointed state court litigant to pursue his appeal in federal rather than state court." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997) (internal citations omitted).

15

judgment confirming the sale and was therefore barred by Rooker-Feldman); *Ritter v. Ross*, 992 F.2d 750 (7th Cir. 1993) (holding that Rooker-Feldman barred plaintiffs' complaints that they were deprived of their property without due process due to irregularities in the notice and approval of the sale of a parcel, because these claims were inextricably intertwined with the merits of the state court proceeding confirming the sale.) If an alleged injury resulted from the state court judgment, then the doctrine applies, and the judgment may not be reviewed. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998). "If the injury was not caused by the state court's decision, jurisdiction may be present or may be removed by a different legal theory." *Johnson v. Orr*, 2007 WL 4531798, *2 (N.D. Ill. 2007).

In *Taylor v. Federal Nat. Mortg. Ass'n*, the plaintiff alleged that "fraud was perpetrated on the state court that granted the judgment of foreclosure" through which she lost her home. 374 F.3d at 533. The Seventh Circuit Court of Appeals noted that "the relief granted when a claim of fraud on the court succeeds is that the party claiming fraud is relieved from the judgment, i.e., the judgment is set aside." *Id*. Thus, the Court determined, the plaintiff's injuries arose from the state court's judgment, and her request for "the recovery of her home [wa]s tantamount to a request to vacate the state court's judgment of foreclosure," and barred by Rooker-Feldman.

Here, as in *Taylor*, Bernegger's unjust enrichment claim stems directly from the state court judgment awarding attorneys' fees. To prevail on his claim, Bernegger would inevitably be forced to challenge the validity of the state court's order. Thus, it is tantamount to a request to vacate the state court's judgment and barred by Rooker-Feldman.

Bernegger also bases his unjust enrichment claim on his allegation that Gray and Zablocki charged $800 in attorneys' fees for the preparation of their two page motion for relief before the

16

bankruptcy court. (Am. Compl. ¶ 10.) This amount, he claims, was an unreasonable fee for the preparation of a two page motion that should have taken fifteen minutes to produce. (Bernegger's "Brief in Reply" Opp. Motion to Dismiss, Dkt. 47, ¶ 7.) The Defendants assert, and Bernegger does not dispute, that the bankruptcy court, "[w]ithout objection or appeal from the plaintiff" approved an award of attorneys' fees and costs associated with their motion for relief. (Br. Supp. Motion to Dismiss 4.) Because, in their motion, the Defendants presented the $800 in attorneys' fees as a component of their calculation of post-petition arrearage and evidence of "cause" for termination of the automatic stay, it is unclear whether this figure even served as the basis of the court's later award of fees associated with the motion. (Am. Compl., Ex. B-2, ¶ 2.) But even if it did, the principle of claim preclusion prevents this court from re-examining the reasonableness of the fees awarded.

The principle of claim preclusion prohibits parties from re-litigating issues that were or could have been raised in a previous suit, and precludes subsequent claims arising from the "same incident, events, transaction, circumstances, or other factual nebula as a prior suit that ha[s] gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999). Only "core proceedings" in bankruptcy are given effect as to claim preclusion, *see Barnett v. Stern*, 909 F.2d 973, 978 (7th Cir. 1990), but included in the nonexclusive list of matters that are considered "core proceedings" under 28 U.S.C. § 157(b)(2) are "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(g). Under circumstances such as those present here, a "request for fees arising out of a core bankruptcy proceeding is also a core proceeding." *In re Chambers*, 140 B.R. 233, 238 (N.D. Ill. 1992.); *In re Yochum*, 89 F.3d 661, 669 (9th Cir. 1996) ("[A]warding attorneys' fees can be construed as a core proceeding.").

Under federal law, the three requirements of claim preclusion are: (a) a final judgment on the merits in an earlier action; (b) identity of parties or privies in the two suits; and (c) identity of the cause of action in the two suits. *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338 (7th Cir. 1995); *see also Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 952 (7th Cir. 2000). Where two lawsuits arise from a "single core of operative facts, they constitute identical causes of action for purposes of claim preclusion. Although this single group of facts may conceivably give rise to different theories of recovery, under the federal definition a single cause of action remains." *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 339 (7th Cir. 1995). "In other words, a claim is deemed to be identical to a previously litigated claim if the two claims are 'based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence.'" *Quincy Mall, Inc. v. Parisian, Inc.*, 27 Fed. Appx. 631, 637 (7th Cir. 2001) (quoting *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996)).

Here, any award of attorneys' fees in connection with the Defendants' motion for relief from the automatic stay was a final judgment in a core proceeding in bankruptcy, involving the same parties as this federal suit. The Defendants' claim for attorneys' fees before the bankruptcy court and Bernegger's present claim of unjust enrichment arise out of the same core operative facts concerning the Defendants' legal expenses. While he was free to contest the reasonableness of the Defendants' legal fees during the bankruptcy proceeding, or on appeal, Bernegger may not now assert that challenge, based upon the same factual allegations, under the guise of a claim of unjust enrichment.

Because his challenge to the awards of attorneys' fees by the state and bankruptcy courts is barred by the Rooker-Feldman doctrine and the principle of claim preclusion, Bernegger's unjust enrichment claim will be dismissed.

18

**B. FDCPA**

In support of their motions to dismiss, the Defendants argue that these same two doctrines bar Bernegger's FDCPA claims. Bernegger claims the Defendants violated at least two provisions of the FDCPA. Primarily, he claims that the Defendants made use of false representations or declarations in an attempt to collect a debt or information about a consumer, in violation of 15 U.S.C. § 1692e(10). (Am. Compl. ¶ 63.) They did so, he alleges, in three ways. First, they filed with the state court, in connection with their motion to confirm the first sheriff's sale, an affidavit by Zablocki, which claimed an assessor's opinion and tax bill were filed with the court, when neither were actually filed, (Am. Compl. ¶¶ 29, 33, 35) and a report entitled a "Real Estate Owned Property Evaluation," ("the Evaluation") (Am. Compl. ¶¶ 13, 27), which contained obvious errors, and was insufficient to constitute an assessor's opinion for purposes of determining the value of the property (Am. Compl. ¶¶ 19, 29, 33, 35). Second, they submitted falsified and inflated attorneys' fees to the courts. (*Id.* ¶¶ 39, 42.) Third, he claims, the Defendants misrepresented the value of his property within their motion, filed by Pitner, for relief from the automatic stay before the bankruptcy court. (*Id.* ¶¶ 36, 44; Compl. 08-C-0335 Ex. B1.) In addition, Bernegger claims the Defendants violated 15 U.S.C. § 1692c, which governs a debt collector's communications with a consumer, because the Defendants knew he was represented by counsel, but failed to inform his attorney of their proceedings against him and contacted him instead through unauthorized third parties. (Am. Compl. ¶ 57.)

**1. Rooker-Feldman**

According to the Defendants, Bernegger's FDCPA claims are barred by Rooker-Feldman inasmuch as they relate to the Defendants' conduct in the state court foreclosure proceeding,

19

because they are "inextricably intertwined" with the state court's judgment of foreclosure.  (Br. Supp. Mot. to Dismiss 3.)  This is so, they claim, because Bernegger's "injury [was] caused by nothing else than the entry of the foreclosure judgment in state court." (*Id.*)  To the extent he challenges their actions in the state court confirmation proceedings that followed, the Defendants assert that Bernegger's claims are barred because they ask this court "to review, amend, or overturn the February 20, 2008 Order of the Circuit Court." (*Id.*)  I disagree, however, and find that Bernegger's FDCPA claims are not barred by Rooker-Feldman.

If not otherwise barred by the Defendants' immunity, it appears that Bernegger's claims of common law misrepresentation and fraud would be barred as "inextricably intertwined" with the state court's entry of judgment, because these torts, under Wisconsin law, could not be complete until actual damages resulted from the state court's judgment. *See Gorton v. Am. Cyanamid Co.*, 194 Wis. 2d 203, 223, 533 N.W.2d 746, 775 (Wis. 1995) (holding that a claim for negligent misrepresentation in Wisconsin requires actual loss or damage); *D.R.W. Corp. v. Cordes*, 65 Wis. 2d 303, 309, 222 N.W.2d 671, 675 (Wis. 1974) ("Actual damage is an essential element in a cause of action based on fraud.").  However, the Seventh Circuit Court of Appeals has recognized that a violation of § 1692e of the FDCPA, in contrast, occurs immediately upon the making of a prohibited false representation.  *Long v. Shorebank Development Corp.*, 182 F.3d 548, 556 (7th Cir. 1999).

In *Long*, the plaintiff sued her former landlord, and the landlord's attorneys, claiming that they "unlawfully evicted her by filing a complaint against her to collect a rental debt they knew did not exist, using fraud to keep her from going to court to contest the baseless eviction complaint, and knowingly misrepresenting to the court that she did not dispute the eviction." *Id*. at 552.  Among her several claims, the plaintiff alleged that in the notice and complaint served upon her by the

20

Defendants, the Defendants had "falsely represented the character, amount and legal status of the debt" she owed, in violation of § 1692e. *Id.* at 556. She also alleged violations of § 1692f and § 1692g. Although the state court had entered an eviction order based on the Defendants' allegations in the state court proceeding, the Seventh Circuit held that the FDCPA violations alleged by the plaintiff were "independent of and complete prior to the entry of the eviction order," stating, "it makes no difference that Long may also deny the correctness of the eviction order in pursuing these claims." *Id.* Other courts have followed similar logic and arrived at the same conclusion. *See e.g.*, *Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, 387 F. Supp. 2d 752, 754-55 (W.D. Mich. 2005) (holding that Rooker-Feldman did not bar plaintiff's claim that the defendants violated the FDCPA by filing a purportedly false affidavit in support of a debt collection action in state court, because the injury was independent of and complete prior to the state court's entry of judgment.); *Todd v. Weltman, Weinberg & Reis, Co.*, 348 F. Supp. 2d 903, 911 (S.D. Ohio 2004) (holding that Rooker-Feldman did not apply to allegations that the defendant violated the FDCPA by filing false affidavits in support of state court garnishment proceedings, because "the sole action forming the basis of Plaintiffs' FDCPA claims, the filing of a false affidavit, was complete before the state court took any action."), *aff'd*, 434 F.3d 432 (6th Cir. 2006).

Here, Bernegger alleges violations of the FDCPA in connection with the Defendants' filings in state court that are likewise independent of the state court's entry of judgment and subsequent orders regarding the sheriff's sales. Therefore, though like the plaintiff in *Long* he may deny the correctness of the state court decisions, Bernegger's FDCPA claims are not barred under Rooker-Feldman.

21

### 2. Claim Preclusion

The Defendants also argue, however, that the Court should dismiss Bernegger's FDCPA claims as barred by the principle of claim preclusion. As noted, some of Bernegger's FDCPA claims involve the Defendants' conduct in the state court action, and others their conduct in the bankruptcy proceeding. When addressing this issue as it relates to state court proceedings, I must apply the preclusion law of the state in which the court that rendered the earlier judgments sits. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Therefore, Wisconsin law governs the issue of claim preclusion with respect to Bernegger's claims involving the Defendants' filings in the foreclosure action. Wisconsin law, like federal law, recognizes three elements that must be satisfied for claim preclusion to take effect: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723, 728 (Wis. 1995). Wisconsin also follows the "transactional approach" to determine identity between two causes of action. Under this approach, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action, and "a transaction connotes a natural grouping or common nucleus of operative facts." *Menard, Inc. v. Liteway Lighting Products*, 2005 WI 98, ¶ 30, 282 Wis. 2d 582, 698 N.W.2d 738.

The Defendants claim that Bernegger should have plead his FDCPA claims as a defense or counterclaim in the state foreclosure action, and that his failure to do so renders them barred. (Br. Supp. Mot. to Dismiss 3.) As the Defendants note, state and federal courts have concurrent jurisdiction over FDCPA claims. *See* 15 U.S.C. § 1692k(d). Thus, Bernegger could have raised

22

his FDCPA claims as counterclaims in the state court action. As a general rule, however, Wisconsin Statute Section 802.07(1) provides that counterclaims are permissive, not mandatory, such that "where a defendant may interpose a counterclaim but fails to do so, he is not precluded from maintaining a subsequent action on that claim." *A.B.C.G. Enterprises, Inc. v. First Bank Southeast, N.A.*, 184 Wis. 2d 465, 476, 515 N.W.2d 904, 908 (Wis. 1994). Still, the rule is not absolute; Wisconsin recognizes a "common law compulsory counterclaim" exception, which bars a plaintiff from maintaining a subsequent action after failing to impose an available counterclaim, "if a favorable judgment in the second action would nullify the judgment in the original action or impair rights established in the initial action." *Id.*, 184 Wis. 2d. at 476-77, 515 N.W.2d at 908. Of course, "for the common-law compulsory counterclaim rule to apply, a court must conclude that all the elements of claim preclusion are present." *Menard*, 2005 WI 98, at ¶ 28.

It is clear under these standards that to the extent Bernegger has asserted a FDCPA claim challenging the Defendants' claim for the attorneys' fees awarded by the state court in the judgment of foreclosure, (Am. Compl. ¶ 39) it is barred by the doctrine of claim preclusion. His present suit involves the same parties as the state court foreclosure action. Under Wisconsin law, the default judgment of foreclosure entered by the state court qualifies as a final judgment on the merits for the purpose of claim preclusion. *A.B.C.G. Enters.*,184 Wis. 2d. at 481, 515 N.W.2d at 910. There is also identity between the two suits. In the foreclosure action, the court expressly determined the amount of Bernegger's indebtedness, including the attorneys' fees due to the Defendants, and entered default judgment. Therefore, Bernegger may not challenge the award of attorneys' fees merely by pleading a FDCPA violation in his present case.

Identity between two actions may be found even where a plaintiff has presented different theories of recovery in each suit, so long as each action arises from the same transaction. *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 26, 279 Wis. 2d 520, 694 N.W.2d 879 ("Under the transactional approach, the legal theories, remedies sought, and evidence used may be different between the first and second actions. The concept of a transaction connotes a common nucleus of operative facts.") The transaction at issue in the foreclosure proceedings was the debt incurred by Bernegger with respect to his failure to make his mortgage payments, and the Defendants' suit to collect that debt. His FDCPA claim challenging the reasonableness of the Defendants' fees incurred in that action arises out of the same transaction, challenging the amount of his indebtedness.

Thus, this case is distinguishable from the cases in this circuit that have held a suit to collect debt to be based upon a separate transaction for purposes of claim preclusion from subsequent allegations of FDCPA violations during the "collection process." For example, in *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997), the Seventh Circuit held that a defendant telephone service provider's state court action to collect debt incurred by the plaintiff arose from a different transaction than the plaintiff's FDCPA claim that the defendant's bills and notices regarding the debt were intentionally misleading. Similarly, in *Buford v. Palisades Collection, LLC*, 2008 WL 2009885, *6, the Northern District of Illinois distinguished between a defendant's state court suit to collect its debt after the plaintiffs failed to pay their cell phone bills, and the plaintiffs' subsequent FDCPA claims alleging the defendants "systematically engaged in filing and threatening lawsuits on time-barred debts." The *Buford* Court concluded that although the alleged FDCPA violation did not occur until the filing of the state court collection action, it was the type of injury the statute was designed to remedy, in that the violation challenged the debt collection practices of

24

the defendants "irrespective of whether a valid debt actually exist[ed]." *Id*. In contrast, Bernegger's FDCPA claim that the Defendants misrepresented their attorneys' fees to the state court does not challenge debt collection practices unrelated to the determination of his indebtedness. Rather, it objects to the court's conclusion that the sum of attorneys' fees included in the calculation of his overall indebtedness was appropriate.

Based on the foregoing, I conclude that Bernegger's FDCPA claim that the Defendants falsified the attorneys' fees they presented to the state court falls within Wisconsin's "common law compulsory counterclaim" exception, as a favorable judgment on this claim would nullify the state court's judgment awarding the attorneys' fees in the original action. *See A.B.C.G. Enters.*, 184 Wis. 2d 465, 515 N.W.2d 904 (holding that where a previous judgment had established the amount and validity of a mortgage obligation, claims that the obligation was invalid due to misrepresentations by the bank were precluded, because a favorable judgment would directly undermine the original judgment.). The claim is therefore barred under the doctrine of claim preclusion.

Bernegger also asserts FDCPA claims that the Defendants made misrepresentations to the state court in support of their motion to confirm the first sheriff's sale. It is undisputed that the court denied the Defendants' motion, vacated the first sheriff's sale, and ordered that a new sale be held. Thus, a final judgment was entered on by the state court as to the merits of the Defendants' application for confirmation of the first sheriff's sale. However, Bernegger's allegations that the Defendants made misrepresentations in their application for confirmation do not fall within Wisconsin's compulsory counterclaim exception. A favorable judgment on these claims would not undermine the validity of the state court's refusal to confirm the first sale. Thus, the principle of claim preclusion does not apply. *See Wickenhauser v. Lehtinen*, 2007 WI 82, ¶¶ 23-27, 32, 302

25

Wis. 2d 41, 734 N.W.2d 855 (holding that claim preclusion does not bar a plaintiff's subsequent permissive counterclaims, or else the principle would operate as a compulsory counterclaim rule). Accordingly, Bernegger's claims that the Defendants violated the FDCPA by filing their affidavit and Evaluation in support of their state court motion are not precluded.

Neither are Bernegger's FDCPA claims that the Defendants misrepresented the value of his property to the bankruptcy court and communicated with him through unauthorized parties despite his representation by counsel. Under federal law, these claims do not arise out of the same "core of operative facts" as those underlying the bankruptcy court's order lifting the automatic stay. *Brzostowski*, 49 F.3d at 339. In fact, the bankruptcy court expressly stated that "the value of the property would not have changed the court's decision on whether to lift the stay," because the court's consideration of the defendants' motion for relief was limited to Bernegger's compliance or noncompliance with the parties' stipulation and the court's order of October 11, 2007. (*In re Bernegger*, Ch. 13 Case No. 07-24994-MDM, U.S. Bankruptcy Ct. E.D. Wis., Order April 14, 2008.) Accordingly, claim preclusion does not bar those claims.

Bernegger's FDCPA claim based on the Defendants' alleged submission of falsified attorneys' fees to the bankruptcy court is, however, barred. As explained supra, any award of attorneys' fees in connection with the Defendants motion for relief from the automatic stay was a final judgment in a core proceeding in bankruptcy, involving the same parties as this federal suit. The bankruptcy court's order and award of attorneys' fees arose out of the Defendants' motion for relief from the automatic stay and Bernegger's failure to comply with the court's earlier order and the parties' agreement, which the court found to constitute "cause" for granting relief. Bernegger's FDCPA claim also arises out of the defendants' motion for relief based upon his failure to pay.

Accordingly, this FDCPA claim is barred, because any award of attorneys' fees was a final decision on the merits, the claim involves the same parties as the bankruptcy proceeding, and both arose from a "single core of operative facts." *See Brzostowski*, 49 F.3d at 338.

### C. Inadequate Service of Defendant WaMu

The Defendants claim that regardless of the Court's ruling as to the other components of their motions to dismiss, dismissal of all claims against WaMu is appropriate for lack of personal jurisdiction, based upon Bernegger's failure to effect adequate service upon it or provide a meaningful opportunity for waiver. (Br. Supp. Mot. to Dismiss 6.) Bernegger claims that WaMu was properly served pursuant to Rule 4(h)(1)(A), which allows service of a corporation in the same manner prescribed by Rule 4(e)(1) for service of an individual. (Br. Opp. Mot. to Dismiss ¶ 4.) In support of his argument that service was adequate, Bernegger has submitted the affidavit of a process server, Mr. Matt Nascimento, who declares that he hand delivered a copy of the amended complaint to "Washington Mutual, FA 1301 Second Avenue WMC3500 Seattle, WA 98101." (Nascimento Aff., March 13, 2008.) This was sufficient, Bernegger claims, because Rule 4(e) allows for service of an individual by "leaving the Complaint with a person of proper age and at the Defendant's usual location." (Br. Opp. Mot. to Dismiss ¶ 4.)

However, Bernegger misinterprets the requirements of Rule 4, and it appears that WaMu has not been properly served. Rule 4 provides that absent waiver, or the provision of federal law to the contrary, service of a corporation in a judicial district of the United States must be made, "in the manner prescribed by Rule 4(e)(1) for serving an individual," or

27

> by delivering a copy of the summons and of the complaint to an officer, a managing
> or general agent, or any other agent authorized by appointment or by law to receive
> service of process and—if the agent is one authorized by statute and the statute so
> requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) provides that service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Rule 4(h)(1) does not permit service of a corporation pursuant to Rule 4(e)(2), which allows service of an individual by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."

Here, there is no indication that Bernegger delivered a copy of the summons and complaint to an officer, managing or general agent, or otherwise authorized agent of WaMu. Rather, delivery was made more generally to its corporate headquarters. Neither the state law of Wisconsin, Wis. Stat. § 801.11(5), nor the state law of Washington, RCW 4.28.080, permits service of a corporation in this manner. A plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the parties, including valid service of process. *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005). Bernegger has failed to meet that burden. All claims against WaMu will therefore be dismissed for insufficient service of process. However, to the extent that they are not dismissed on their merits for the reasons stated elsewhere in this order, the dismissal of such claims will be without prejudice.

### D. Remaining Claims Against Defendant Pitner

Bernegger has asserted two additional claims against Defendant Pitner, who requests their dismissal. Bernegger purports to bring a claim against Pitner for "abuse of process," in which he

alleges without further elaboration that Pitner "deliberately misused the Federal Court process to gain a favorable ruling by submitted [sic] lies to that Court." (Compl. 08-0335 ¶ 37.) In Wisconsin, to prevail on a claim of abuse of process, a plaintiff must allege and prove the following two elements: (1) a purpose other than that which the process was designed to accomplish, and (2) a subsequent misuse of the process. *See Strid v. Converse*, 331 N.W.2d 350, 355 (Wis. 1983); *Thompson v. Beecham*, 241 N.W.2d 163, 166 (Wis. 1976). The Court cannot reasonably infer on what basis Bernegger claims that Pitner acted with improper purpose, or misused a court proceeding from Bernegger's conclusory allegation. Therefore, this claim will be dismissed without prejudice.

Bernegger also purports to assert a claim pursuant to 15 U.S.C. § 1611, which provides for criminal sanctions for of violations of the credit-advertising provisions, 15 U.S.C.A. §§ 1661-1665b, of the Truth in Lending Act (a portion of the CCPA). Not only does Bernegger fail to adequately plead a violation of the Act, but he may not maintain a private cause of action for such criminal sanctions. This claim too will be dismissed.

## CONCLUSION

For the reasons stated above, Bernegger's motions for leave to further amend his complaint (07-C-1028 doc. #s 53 and 56) are denied. Accordingly, the motion to dismiss by Defendant O'Dess (07-C-1028 doc. # 60) is denied as moot. Bernegger's motion for reconsideration (07-C-1028 doc. #18) is also denied. All claims dismissed in the Court's order of March 3, 2008 remain dismissed, and Bernegger's claims alleging constitutional violations and common law misrepresentation are also dismissed as to Defendant Pitner. The motion to dismiss filed by Defendants WaMu, Gray, Zablocki and Pitner (07-C-1028 doc. # 24), are granted in part and denied

in part. Bernegger's unjust enrichment claims and FDCPA claims regarding the attorneys' fees charged by the Defendants are dismissed with prejudice for failure to state a claim upon which relief may be granted. All remaining claims against Defendant WaMu are dismissed without prejudice for lack of personal jurisdiction due to insufficient service of process. Finally, the motion to dismiss Bernegger's claims against Defendant Pitner alleging abuse of process and violation of the CCPA (08-C-335 doc. # 7) are dismissed for failure to state a claim. The former, however, is dismissed without prejudice.

Bernegger will be allowed to proceed with his claim that Defendants Gray and Zablocki violated § 1692e(10) of the FDCPA by falsely representing in an affidavit filed with the state court that a tax bill and assessor's opinion were submitted when they were not, and submitting the erroneous Evaluation to the state court. He may also proceed with his claims that Gray, Zablocki, and Pitner violated the FDCPA by falsely representing the value of Bernegger's property in their motion for relief from the automatic stay filed with the bankruptcy court. Finally, Bernegger may proceed with his claim that Gray and Zablocki violated § 1692c by contacting him through unauthorized third parties. The Clerk is directed to set this matter on the Court's calendar for a Rule 16 scheduling conference.

**SO ORDERED** this ___23rd___ day of October, 2008.


s/ William C. Griesbach_____
William C. Griesbach
United States District Judge

30