# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PETER M. BERNEGGER,

        Plaintiff,

    v.                                     Case No. 07-C-1028

GRAY & ASSOCIATES LLP, *et al.*,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Pro se Plaintiff Peter M. Bernegger filed this lawsuit against several financial institutions and their attorneys asserting claims for fraudulent and negligent misrepresentation, mail fraud, defamation, unjust enrichment, abuse of process, deprivation of his constitutional rights, and violations of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601, *et seq*., and Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. The Court previously granted motions to dismiss which disposed of a majority of Mr. Bernegger's claims. Plaintiff's remaining claims are: (1) that Defendants Gray & Associates, LLP ("Gray") and Steven E. Zablocki violated § 1692e(10) of the FDCPA by filing a false affidavit and submitting an erroneous evaluation in a state court foreclosure proceedings involving Mr. Bernegger's property; (2) that Defendants Gray, Zablocki and Jay J. Pitner violated § 1692e(10) of the FDCPA by falsely representing the value of Bernegger's property in their motion for relief from the automatic stay filed with the bankruptcy court; and (3) that Gray and Zablocki violated the § 1692c of the FDCPA by contacting Mr. Bernegger through unauthorized third parties. The case is presently before me on the defendants'

motion for a protective order, sanctions and summary judgment, as well as numerous motions by Mr. Bernegger. For the reasons that follow, the defendants' motion for summary judgment and sanctions will be granted, thereby rendering moot their motion for a protective order. Mr. Bernegger's motions will be denied. Before addressing defendants' motion for summary judgment, it is necessary to address a number of preliminary matters.

## I. PRELIMINARY ISSUES

### A. Recusal

On July 9, 2009, Mr. Bernegger filed a motion requesting that the Court recuse itself from presiding over these proceedings. (Doc. # 178.) Mr. Bernegger cites three reasons why I should recuse myself from this matter. He first states that he has "recently been contacted by an entity (redacted) which stated to Plaintiff that Judge Griesbach is under investigation by the Department of Justice." (Doc. # 179.) The subject of the alleged investigation, according to Mr. Bernegger, is my treatment of pro se litigants. (*Id.*) The second reason for recusal, Mr. Bernegger contends, is the fact that I directed the clerk to refuse his request for subpoenas in violation of Fed. R. Civ. P. 45(a)(3), which states: "The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it." Finally, Mr. Bernegger claims that I "sternly told" him that objections were not allowed in my court. (*Id.*) Only the second reason merits more than minimal discussion.

As to the first reason, I know of no investigation by the Justice Department, and Mr. Bernegger offers nothing more than his unsworn assertion with no foundation that such an investigation exists. Likewise with respect to the third reason, Mr. Bernegger provides no citation to the record or a transcript containing the alleged statement that I do not allow objections. My only recollection is that I may have noted at an earlier hearing in one of several matters involving Mr.

2

Bernegger that have been before me that it is improper to interrupt counsel for the opposing party with an evidentiary objection during a legal argument. I may have explained to him that he should wait for his turn to respond, but I have no recollection of any statement to the effect that objections in general are not allowed. I therefore conclude that neither of those reasons warrants recusal.

As for the claim that I instructed the clerk not to issue subpoenas to Mr. Bernegger, further discussion is in order. Based on past experience with pro se litigants who have attempted to subpoena state and federal government officials, including United States Representatives and Senators, to court proceedings, the clerk declined to issue blank subpoenas to Mr. Bernegger upon his request without first seeking my approval. Whether the clerk did so at my express direction or simply assumed from previous cases that she should handle such requests in this manner, I no longer recall. The intent, however, was not to deny a pro se litigant a subpoena, but to insure it would not be misused. In the case in which the request was made, I reviewed the docket and saw that a motion to stay the matter and refer it to arbitration was pending, thereby making discovery premature. I therefore instructed the clerk not to issue the subpoenas requested by Mr. Bernegger, and shortly thereafter ordered the matter to arbitration. In response, Mr. Bernegger filed a complaint charging me with judicial misconduct. Notwithstanding my own view that requiring such approval is appropriate under the Rule and indeed is expressly authorized by local rule in some districts, *see, e.g.* Local Rule 45.1 (C.D. Ill.), I agreed to direct the clerk to proceed to issue subpoenas in such cases without seeking my approval, and the complaint was dismissed.[1] In this case, the clerk

---

[1] My express or implied directions to the clerk were consistent with *The Guide to Judiciary Policies and Procedures*, which states:

> Except where there exist possibilities for abuse of subpoenas issued in blank, *such as in pro se matters*, clerks should not attempt to exercise any control or supervision

3

followed those directions and, to the detriment of the attorneys and third party witnesses, Mr. Bernegger was issued subpoenas at his request with no supervision by the court.

I do not believe that my previous denial of his request for a subpoena in a separate action or Mr. Bernegger's complaint against me requires recusal. Section 455(a) of the Judicial Code provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In deciding whether recusal is warranted, I must consider whether Mr. Bernegger presents "a reasonable basis for finding an appearance of partiality under the facts and circumstances of the case," *In re United States*, 572 F.3d 301, 308 (7th Cir. 2009) (internal quotation marks and citations omitted), so as to require my recusal from this matter. As these proceedings are already well underway, I must exercise care in determining whether recusal is necessary, as "'[A] change of umpire mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping.'" *Id.* (quoting *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir. 1988)).

The mere fact that Mr. Bernegger has filed a misconduct complaint against me does not require recusal. The Seventh Circuit has explicitly rejected this contention. In *In re Mann* the Court noted that "if that were the rule, litigants displeased with Judge A's adverse rulings could easily manipulate the system by filing a misconduct complaint, thereby disqualifying Judge A from hearing the case, in the hopes that the case would then be assigned to Judge B who might be more

---

of the use of subpoenas issued. In those instances where there is the belief that abuse is occurring, the judges should be consulted before issuance or refusal of blank subpoenas.

*The Guide To Judiciary Policies and Procedures*, § 9.04(c)(3) (italics added).

4

sympathetic to their cause." 229 F.3d 657, 658 (7th Cir. 2000). "Judge shopping, the Court observed, "is not a practice that should be encouraged." *Id.* That is precisely what Mr. Bernegger is seeking to accomplish here. And while I would relish not having to undertake the work needed to issue a decision in this case, I conclude it would be unfair to the other parties who have already expended substantial time and resources in responding to this suit and to whatever judge to whom the case would be reassigned for me to grant plaintiff's motion. In plain fact, I am satisfied that the issue raised in Mr. Bernegger's misconduct complaint was a legal question concerning the proper interpretation of Rule 45 and not one of personal misconduct. It raises no more an appearance of impropriety for me to decide the case than if he had brought an interlocutory appeal. Accordingly, the motion that I recuse myself is denied, and I now turn to the other motions before me.

**B. Motion to Extend Discovery, Stay Decision on Summary Judgment and For Leave to File A Second Amended Complaint.**

The defendants filed and served their motion for summary judgment on Mr. Bernegger on March 23, 2009. Pursuant to Civil L.R. 56.1, the defendants included in their motion the text of Fed. R. Civ. P. 56(e) and (f), along with Civil L.R. 7.1, Civil L.R. 56.1, and Civil L.R. 56.2 so that Mr. Bernegger would understand the time allowed for his response and the importance of doing so. (Doc. # 149.) Under Civil L.R. 7.1 and Civil L.R. 56.2, Mr. Bernegger had thirty days in which to respond to the defendants' motion for summary judgment and his failure to do so would result in the proposed findings of facts submitted by defendants being deemed admitted. Despite these warnings, he did not file a response or seek an extension within the time allowed. Instead, he waited until May 15, 2009, to file a motion to extend discovery by 90 days, stay the Court's decision on

5

summary judgment and grant him leave to file an amended complaint. (Doc. # 157.) On June 17, 2009, while this first motion was still pending, Mr. Bernegger filed a motion for leave to amend his complaint. (Doc. # 170.) Mr. Bernegger's motions will be denied.

Mr. Bernegger's motion to extend time for discovery and stay the court's decision on the defendants' motion for summary judgment is properly construed as a motion for relief under Rule 56(f) of the Federal Rules of Civil Procedure. Entry of summary judgment is inappropriate unless the opposing party has been granted a fair opportunity to conduct discovery needed to meet the factual basis of the motion. *Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Rule 56(f) provides that where a party opposing a motion for summary judgment shows "by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken . . . ." Fed. R. Civ. P. 56(f). A Rule 56(f) motion "must (1) be presented in a timely manner; (2) show good cause for the failure to discover the necessary facts sooner; (3) set forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time; and (4) establish that the sought facts, if found, will "influence the outcome of the pending motion for summary judgment." *Adorno v. Crowley Towing And Transp. Co.* 443 F.3d 122, 127 (1st Cir. 2006) (quoting *Resolution Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir.1994)); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n. 5 (7th Cir.2000).

Here, Mr. Bernegger's attempt to invoke Rule 56(f) must fail for several reasons. His first problem is that his motion is untimely. He made the motion almost a month after his time to file a response to the defendants' motion for summary judgment had run and he has failed to provide

6

sufficient reason to excuse his late submission. Mr. Bernegger's failure to request relief in a timely fashion is reason enough to deny the motion.

Also fatal to Mr. Bernegger's attempt to invoke Rule 56(f) is his failure to provide an affidavit as required by the rule. Instead of providing an affidavit, Mr. Bernegger merely submitted an untimely motion, brief, and a number of exhibits consisting of various documents and deposition transcripts. Although pro se litigants are afforded indulgent readings to the documents they file, every party to a civil action in federal court is bound by the rules of procedure. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). In his brief he makes broad unsupported allegations suggesting a conspiracy between banks and law firms through secret fee splitting agreements to deprive him and thousands of Wisconsin homeowners of the equity in their homes, but there is no effort to tie these unsupported allegations to the claims in this case.

In addition to the motion's tardiness and the fact Mr. Bernegger fails to provide the affidavit Rule 56(f) requires, he has also failed to say what facts he believes further discovery would disclose that are material to the claims he has asserted and the defendants claim that they are entitled to summary judgment. Mr. Bernegger merely asserts that he was detained based upon false reports of one Michael Cash, a third party whom he alleges is in league with defendants or those whom he would name as defendants in a second amended complaint.[2] Mr. Bernegger asserts that Cash,

---

[2]Mr. Bernegger was detained in connection with a criminal case pending in the Northern District of Mississippi, *United States v. Bernegger*, Case. No. 01-CR-176-P-D, in which he is charged in a six-count indictment with conspiracy, mail fraud and bank fraud. *United States v. Bernegger*, Case No. 8-M-657 (E.D. Wis.).

7

"under a lawyer/client legal retainer with Fidelity National Information Services, Inc.," made the allegedly false reports in order to harm Mr. Bernegger and "kill this lawsuit." (Doc. # 158 at 2.) Because he was detained, Bernegger claims he lost a substantial amount of time to conduct discovery, even though it had been stayed by order of the Court. Mr. Bernegger accuses Cash of "subordination of perjury."[3] (*Id.* at 1.)

The Court can ascertain no reason why Mr. Bernegger should be permitted more discovery. Discovery in this matter had already been stayed at the request of the defendants pending resolution of the defendants' motion for a protective order filed in response to Bernegger's abusive discovery practices that are recounted below. (Doc. # 137.) Further, given the FDCPA claims he makes, it does not appear that allowing him to unearth more information would enable him to raise a genuine issue of material fact. Indeed, as will be seen, it appears that the claims amount to little more than

---

[3]Beyond the accusation against Cash, Mr. Bernegger makes other accusations in support of his request for more discovery. Mr. Bernegger claims that he has written confirmation that nonparty Terry Gray committed a crime and violated the ethical rules governing lawyers, though the only document Mr. Bernegger relies on is a letter from the investigative body describing Mr. Bernegger's grievance. (*Id.* at 3.) He asserts that Pitner did not show for a properly-noticed deposition, despite the fact that the Court had previously stayed the deposition by an order dated January 26, 2009. (Doc. # 137.) Mr. Bernegger has not been shy in leveling serious allegations of criminal and ethical malfeasance, as I observed in another case he brought in this Court:

> Were it not for the fact that Bernegger's case is being dismissed on its merits, the Court would give serious consideration to dismissal as a sanction for incivility. In view of the fact that Bernegger has had other cases before the Court, including one that is still pending, however, he is hereby warned that such attacks on the character of a party, witness or counsel in any case before this Court may result in sanctions, including but not limited to dismissal.

*Bernegger v. Morrissette, et al.*, No. 08-C-977, 2009 WL 911394, *10 (E.D. Wis. Mar. 31, 2009). Mr. Bernegger has manifestly failed to heed the Court's warning regarding uncivil conduct, and had the defendants not demonstrated that they were entitled to summary judgment on the merits the Court would consider dismissal of this action as a sanction.

8

clerical errors in various filings that were made in Mr. Bernegger's bankruptcy and foreclosure proceedings. There is no suggestion that any one of the alleged violations resulted in any prejudice or harm to Mr. Bernegger or benefit to the defendants. Because Mr. Bernegger has made no showing of the specific discovery he needs but has not yet been able to obtain in order to respond to the pending motion for summary judgment, and because he has abused the discovery process by attempting to intimidate witnesses and posing questions having no relevance to the limited claims that survived the defendants' motion to dismiss, his motion to extend discovery and stay the court's decision on the motion is denied.

Finally, plaintiff also requests leave to file an amended complaint, apparently laboring under the mistaken notion that had he not been detained and been able to file another amended complaint, defendants could not have moved for summary judgment. But the federal rules do not afford plaintiffs numerous "do overs" to keep an otherwise doomed lawsuit alive, as Mr. Bernegger would have been required to obtain the defendants' consent or leave of the Court to file a second amended complaint at this stage in the litigation. Fed. R. Civ. P. 15(a)(2). Bernegger initially moved to amend the complaint in his motion filed on May 15, 2009, but did not attach a copy of the proposed amended pleading as required by Civil L.R. 15.1. On June 17, 2009, Mr. Bernegger filed another motion to amend the complaint, this time attaching a copy of his 45 page proposed amended pleading. (Doc. # 170.) In addition to naming Gray, Pitner and Zablocki, the defendants remaining in this action, the proposed second amended complaint names Fidelity National Information Services, Inc. and O'Dess & Assoc. CV [sic] as defendants, and presents ten claims.[4]

---

[4]The claims plaintiff would bring in his second amended complaint are: fraudulent misrepresentation; negligent misrepresentation; misrepresentation intentional deception; abuse of process; violation of Bankruptcy Code §§ 105(a) and 506(b); violation of Bankruptcy Rule 2016(a);

9

The decision whether to grant leave to file an amended complaint "is a matter within the sound discretion of the district court." *J.D. Marshall Int'l v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 391 (7th Cir. 1989)).

> Leave to amend the pleadings may be denied for 'apparent or declared reasons' such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'

*Id.* (quoting *Foman*, 371 U.S. at 182).

If plaintiff were granted leave to file another amended complaint, he would cast another wide net in his allegations regarding the "connections" between defendants, a defendant who was previously dismissed from this case, and a third-party in the mortgage industry. There is nothing to suggest that justice requires that leave be granted for Mr. Bernegger to file a second amended complaint, and to do so now given the posture of this case would be at odds with securing the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. It would necessitate reopening discovery and subjecting the defendants and their counsel to more of plaintiff's discovery tactics and would likely result in their seeking another protective order. I conclude that because amending the pleadings at this point would be futile and result in undue prejudice to the opposing parties, this untimely, last gasp effort to keep this case alive must fail; Mr. Bernegger's motion for leave to file a second amended complaint will be denied.

---

breach of contract (for alleged breach of a confirmed plan in bankruptcy); an FDCPA claim; violation of the automatic stay in his bankruptcy proceedings; and civil conspiracy. Much of the would-be claims appear to relate to Mr. Bernegger's theory that Fidelity National Information Services, Inc. participated in secretive fee-collection and fee-splitting agreements with the attorneys involved in the foreclosure and bankruptcy proceedings.

10

Having dispensed with these preliminary matters, I now turn to the substance of defendants' motion for summary judgment, beginning with the facts.

## II. SUMMARY JUDGMENT

### A. Background

Plaintiff has not timely responded to defendants' proposed finding of facts, which were included in their brief in support of the motion for summary judgment. Thus, to the extent defendants' factual presentation is supported by admissible evidence, I will adopt it as true, though I will construe it in a light most favorable to Mr. Bernegger. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

### 1. The Gray Firm and its Procedures

Defendant Gray is a law firm that provides legal counsel to financial institutions and bankers. (Defs.' PFOF ¶ 1.) The attorneys at Gray, which include Pitner and Zablocki, concentrate their practice in certain areas in order to develop expertise in those areas. (*Id*. at ¶ 5.) Some Gray attorneys, such as Zablocki, dedicate most of their practice on foreclosures, whereas other attorneys, such as Pitner, focus on bankruptcy. (*Id*. at ¶¶ 6-7.)

To ensure efficiency, accuracy, and reliability in document preparation and dissemination, Gray has structured its non-attorney staff into several divisions. (*Id*. at ¶ 8.) Gray has separate departments for foreclosures, bankruptcies, evictions, and other areas. (*Id*. at ¶ 9.) Each new staff employee at Gray undergoes approximately 90 days of training, which includes face-to-face training with an experienced employee in the department and sub-group to which they are assigned and in which all work of the employee is reviewed, so that they become familiar with the kinds of documents they will be preparing for attorney review. (*Id*. at ¶ 14.) At the same time, the new

11

employee participates in "passport meetings" with every supervisor so that the employee can see how the work they will be doing for a certain sub-group fits into the larger processes overseen by the attorneys. (*Id*. at ¶ 15.)

Gray makes use of checklists in training new employees about the practices and procedures it employs to help ensure the completeness and accuracy of pleadings that are prepared by staff and revised or approved by attorneys. (*Id*. at ¶ 16.) One such checklist identifies tasks associated with motions for confirmation of sheriff's sales in state court foreclosure proceedings. (*Id*. at ¶ 18.) The confirmation of sale "Motion Check List" in place during the time of the Bernegger foreclosure—and which reflects the practices and procedures of Gray— includes an item relating to checking "appearances" by defendants and the appropriate addresses on service papers. Satisfying this item requires the Gray staff, and the assigned attorney, to make sure that the motion is sent to the appropriate address, including the address of an attorney rather than a party if that party has appeared by an attorney. (*Id*. at ¶ 19.) Gray also uses a computer-based case management system. (*Id*. at ¶ 23.) The information stored in the data base would include the name and address of any attorney representing any party in a foreclosure case, to be used for the service of pleadings and other papers. (*Id*. at ¶ 25.)

The confirmation of sale "Motion Check List" in place during the time of the Bernegger Foreclosure Action—and which reflects the practices and procedures of Gray— includes an item relating to the "Tax Bill." Satisfying this item requires that the Gray staff and the assigned attorney make sure that the motion and supporting papers include a tax bill or other documented evidence of value of the subject property, as well as an accurate description of that documentation. (*Id*. at ¶ 21.)

The area of law in which Gray concentrates requires that its attorneys have an understanding of the FDCPA. (*Id*. at ¶ 26.)  The written materials provided to Gray's new hires contain a section on the FDCPA and what the firm must do to comply with it.  (*Id*. at ¶ 27.)  In 2002, Gray formed the FDCPA Compliance Committee.  (*Id*. at ¶ 28.)  The committee is comprised of the attorney in charge of the bankruptcy department, associate attorneys at the firm (starting in 2005), the operations manager, some of the foreclosure and bankruptcy supervisors, and the firm's lead paralegal.  (*Id*. at ¶ 29.)  Pitner has been part of the committee since its inception; Zablocki joined the committee in 2005.  (*Id*. at ¶ 30.)  Since February 2006, that committee has met at least twice a year to discuss the FDCPA, changes in the act, new developments in that area of law, and any other issues that relate to compliance with the act.  (*Id*. at ¶ 31.)  The committee has in place a process to meet more frequently than twice a year if (1) there has been a significant court decision during the interim that affects how Gray does things or (2) the firm's continuing assessment of our practices and procedures reveals a loophole where the firm is inadvertently not complying with the law.  So far, Gray has not had such a meeting for either reason.  (*Id*. at ¶ 32.)  The committee disseminates information relating to the act to the firm as a whole if it deems that information necessary and important to the operations of the firm.  (*Id*. at ¶ 33.)

**2. The Foreclosure Action Against Mr. Bernegger**

On May 31, 2006, Gray commenced a foreclosure action in Waupaca County Circuit Court against Mr. Bernegger.  (*Id*. at ¶ 34.)  Bernegger failed to answer or otherwise respond to the summons and complaint, and the court entered default judgment against him and in favor of Washington Mutual on July 24, 2006.  (*Id*. at ¶ 35.)  That Judgment, among other things, affirmed as "proven and true" the material allegations of the complaint, authorized the plaintiff to add other

13

lienholders as defendants, and set forth the total indebtedness owed by Mr. Bernegger to the plaintiff at that time. (*Id*. at ¶ 36.) On September 12, 2006, Gray filed an Amended Summons and Amended Complaint that identified other entities that held liens on Bernegger's property, and attached a report that identified those lienholders and the amounts of those liens. (*Id*. at ¶ 37.) Mr. Bernegger appears to have borrowed heavily against his house. The Amended Complaint attached a title report that identified liens on his property, other than that of the plaintiff in the foreclosure action, in favor of (I) E-Trade Bank in the amount of $100,000; (ii) Washington Mutual Bank, FA in the amount of $145,000; (iii) Anchor Bank FSB in the amount of $100,000; and (iv) J. Patrick Caldwell and BancorpSouth Bank in the amount of $140, 900.21. (*Id*. at ¶ 38.) Bernegger admitted at his deposition that a title report constitutes an "independent valid account" of liens on his property. (*Id*. at ¶ 39.)

Following entry of default judgment against Mr. Bernegger, Gray made several attempts to sell the foreclosed-upon property through a sheriff's sale and confirm that sale. (*Id*. at ¶ 40.) On or about December 7, 2006, Gray filed a motion for confirmation of sheriff's sale and supporting papers in an effort to confirm a sale that took place on November 28, 2006. (*Id*. at ¶ 41.) Before the hearing took place on that motion, however, Mr. Bernegger declared bankruptcy and the automatic stay provision of 11 U.S.C. § 362 prevented the confirmation of the sale. (*Id*. at ¶ 42.) In an order dated May 30, 2007, the bankruptcy court dismissed Bernegger's bankruptcy petition. (*Id*. at ¶ 43.)

On or about June 19, 2007, Gray again moved for a judicial confirmation of the sheriff's sale. (*Id*. at ¶ 44.) Paragraph 9 of the Affidavit of Additions to Judgment filed by Gray in connection with its June 2007 motion states: "9. That a copy of the tax bill is attached hereto

14

indicating the assessor's opinion of value." (*Id*. at ¶ 45.) In fact, however, a tax bill was not attached. Instead, the attachment to the affidavit consisted of a "real estate owned property evaluation" that estimated the value of Mr. Bernegger's residence at between $675,000 and $700,000. (*Id*. at ¶ 46.) Defendants' unrebutted assertion is that the reference to the "tax bill" in the affidavit was an inadvertent error. Zablocki did not realize that the June 2007 affidavit, and any other similar affidavit filed by Gray in the Bernegger foreclosure action, either failed to attach a document relating to property value or mislabeled the attached document relating to property value. (*Id*. at ¶ 48.)

Once again, before the hearing on that motion could take place, Mr. Bernegger filed for bankruptcy; the automatic bankruptcy stay prevented further hearing on that motion. (*Id*. at ¶ 50.). On August 29, 2007, Gray filed a motion in the bankruptcy court seeking relief from the automatic stay. (*Id*. at ¶ 51.) The motion for relief from automatic stay contains the following paragraph:

> 4. That the total amount due to the movant is approximately $195,234.70, which may substantially exceed the encumbered property's value. Accordingly, the property is burdensome or of inconsequential value and benefit to the estate and the trustee should be ordered to abandon the estate's interest, if any, in the property pursuant to Section 554(b) of the Bankruptcy Code.

(Decl. of Jay J. Pitner, Ex. A, Motion, August 29, 2007.) In an order dated October 11, 2007, the bankruptcy court granted Gray's motion, and lifted the automatic stay. (Defs.' PFOF ¶ 53.).

Consequently, on or about December 27, 2007, Gray filed another motion for confirmation of sheriff's sale, and supporting documents to the court seeking judicial confirmation of the sheriff's sale held in November 2006. (*Id.* at ¶ 54.) Mr. Bernegger claims that neither he nor his attorney received a copy of that filing by Gray in a timely fashion; instead, Bernegger claims that he received

15

a copy of the December 2007, motion directly at his address in Mississippi and that his attorney did not receive a copy of that motion from Gray. (*Id*. at ¶ 55.) Defendants assert, and Mr. Bernegger again provides nothing to challenge the assertion, that the mailing of these papers directly to him was an inadvertent error of Gray's staff and attorneys, as Gray's normal practice and procedure would have directed the documents to Mr. Bernegger's attorney. (*Id*. at ¶ 56.)

As a result, given objections raised by Mr. Bernegger's attorney regarding the manner of providing notice of the motion, the court adjourned the January 10, 2008 hearing on that motion and rescheduled that hearing for February 7, 2008. (*Id*. at ¶ 59.) On January 10, 2008, Gray filed an updated motion for confirmation of sheriff's sale, and supporting documents to the court seeking judicial confirmation of the sheriff's sale held in November 2006. (*Id*. at ¶ 60.) At the February 7, 2008, confirmation hearing, the Waupaca County Circuit Court denied Gray's motion and ordered that a new sale be held. (*Id*. at ¶ 61.) Another sale was held by the sheriff on May 13, 2008. Gray filed a motion for confirmation of the sale and supporting papers on or about May 16, 2008. (*Id*. at ¶ 62.) In its May 2008 motion seeking confirmation and attachments, Gray submitted the Waupaca County Real Estate Tax Record which identified an assessed value in 2007 of $575,300, a "total value" of $620,200, a "fair market value" of $736,500, and a "comparative sale" having been made for $521,500. (*Id*. at ¶ 63.)

On June 6, 2008, the state court granted Gray's motion and confirmed the May 13, 2008 sale. (*Id*. at ¶ 64.) The winning bidder of the sale was Washington Mutual Bank, which bid $373,000 for the property. (Decl. of Steven E. Zablocki Ex. G.) In the confirmation order, the court amended the findings of fact, conclusions of law, and judgment contained in the July 2006 Judgment to add the facts set forth in the Amended Complaint regarding the additional lienholders,

16

the amounts of their liens, and the relative priority of those liens. (Defs.' PFOF ¶ 65.) The Wisconsin Court of Appeals summarily affirmed the Waupaca court's Order Confirming Sale. (*Id.* at ¶ 66.)

**3. The Present Causes Of Action**

As noted in the Court's Decision and Order of October 23, 2008, Mr. Bernegger was permitted to proceed with the following claims in this lawsuit:

> Bernegger will be allowed to proceed with his claim that Defendants Gray and Zablocki violated § 1692e(10) of the FDCPA by falsely representing in an affidavit filed with the state court that a tax bill and assessor's opinion were submitted when they were not, and submitting the erroneous Evaluation to the state court. He may also proceed with his claims that Gray, Zablocki, and Pitner violated the FDCPA by falsely representing the value of Bernegger's property in their motion for relief from the automatic stay filed with the bankruptcy court. Finally, Bernegger may proceed with his claim that Gray and Zablocki violated § 1692c by contacting him through unauthorized third parties.

(Doc # 81 at 30.) The factual background regarding the affidavit, property evaluation, motion, and the allegedly improper contacts is discussed below.

**a. The Affidavit**

In paragraph 7 of his First Amended Complaint, Mr. Bernegger alleged that the June 2007 motion filed by Gray & Associates in Waupaca County constituted a violation of the FDCPA:

> 7. WaMu through its agent GrayAssoc continued the matter by filing a Order Confirming Sale regarding Circuit Court Case No. 06-CV-224, with an Original Notice of Application for Confirmation of Sale, a broker's price opinion and a sworn affidavit signed by Attorney Zablocki of GrayAssoc. All were filed with the District Court on June 19th, 2007. *See Exhibit A1-3.*

(1st Am. Compl. ¶ 7.) Bernegger further alleged that the June 19, 2007 affidavit (the "Affidavit") did not attach an assessor's opinion of value, as claimed in paragraph 9 of the Affidavit; instead, it attached a "property evaluation" form. (*Id.* at ¶ 73.) Exhibits A1-3, which were attached to the

17

complaint, are comprised of the June 15, 2007 cover letter by Gray submitting the confirmation of sale along with a two-page affidavit by Zablocki supporting that motion.

In response to written discovery requests asking Mr. Bernegger to identify any alleged falsehood in the Affidavit, he responded as follows:

> The total exhibit of 3 pages is fraudulent where Washington Mutual Bank is a false plaintiff. Other parties than the note owner did the foreclosure including the Fidelity group of companies names above; collection agency Moss Codilis LLP, United Bank located in Texas, Demetrios Pavlou, O'Dess & Assoc. c.v., Maria Borresen and OCWEN. Defendants again knew this arrangement yet still filed this sworn affidavit with the court. Documents supporting this were submitted in the Rule 26 disclosure and/or are attached.

(*Id*. at ¶ 75; Decl. of Bryan K. Nowicki, dated March 23, 2009, Ex. B: Pl.'s Answers to Req. for Interrogs., dated January 5, 2009, at 2-3).

**b. The Property Evaluation**

Mr. Bernegger also complains about a property evaluation report, which he alleges violates the FDCPA:

> 13. On November 9th and also on 12th 2007 Bernegger visited the Circuit Clerk of Courts and discovered the following regarding the papers WaMu, Zablocki, Gray Assoc filed with the District Court: there was no broker's price opinion filed. There were papers from MARKET INTELLGIENCE [sic] company titled "Real Estate Owned Property Evaluation" ("Evaluation") along with photocopied pictures of Bernegger's property. The Evaluation report was not in Bernegger's mailed copy of said court filings. See exhibit C.

(1st Am. Compl. ¶ 13.) Exhibit C to the complaint is the two-page real estate owned property evaluation submitted by Gray to the Waupaca County Circuit Court (the "Property Evaluation"). In response to written discovery requests asking him to identify any alleged falsehood in this document, Mr. Bernegger responded as follows:

18

The entire 2 page document is fraudulent as it was submitted to a court of law to be taken as a qualified appraisal of a property. Instead it was drafted by LSI which is the party which really controlled the defendants, thus the foreclosure. They are known by several aka's: phone number is 1-800-577-6602 and is LSI, Inc. company owned by Lender Processing Services, Inc.; at the time by Fidelity National Information Services, Inc. aka Fidelity National Foreclosure and Bankruptcy, Inc., aka Fidelity Nation Financial Services, Inc., aka Fidelity Nation Information Solutions. Thus the same party that initiated the foreclosure, directly or indirectly, did the property evaluation and defendants knew this and filed it intentionally with the court. It traces to a Milford, MA office then to Jacksonville, FL, then to Mendota Heights, MN. Documents submitted in Rule 26 disclosure. The exhibit A document itself proves other parties are involved. On the top left in very small print it states :"A Division of Fidelity National Information Solutions" and on the top right it says "fnfs" where both are Fidelity National Information Services, Inc. with the same address in Mendota Heights that court papers were serviced on by Defendants/ Documents supporting this were submitted in the Rule 26 disclosure and/or attached here.

(Defs.' PFOF ¶ 78; Decl. of Bryan K. Nowicki, dated March 23, 2009, Ex. B: Pl.'s Answers to Req. for Interrogs., dated January 5, 2009, at 1-2).

Mr. Bernegger has not claimed that the value attributed to his property by the report is incorrect; at his deposition, Bernegger admitted that he was not qualified to question the value attributed to his property in the report. (Defs.' PFOF ¶ 79.) In his complaint he adopted as accurate the value set forth in the report. (*Id*. at ¶ 80.) (citing 1st Am. Compl. ¶ 36) ("All three parties knew the property was valued at $675,000 - $700,000 by their own Evaluation Report.")

### c. The Motion

In his complaint, Mr. Bernegger identifies the motion filed by Gray in the bankruptcy court as another target of his FDCPA claim:

10. WaMu and GrayAssoc filed a Notice of Motion For Relief From Automatic Stay And Abandonment with the US Court on or about August 29, 2007. Point no. 4 of this motion states the total amount due "is approximately $195,234.75, which may substantially exceed the encumbered property's value". *See exhibit B1*. In these same papers GrayAssoc charged $800.00 on an attempt to collect $2,554.36 as shown under Point No. 2 of the motion. *See exhibit B2 please*.

19

(1st Am. Compl. ¶ 10.)  Exhibit B2 to the complaint is the two-page motion for relief from the automatic bankruptcy stay filed by Gray on August 29, 2007 (the "Motion").

Mr. Bernegger also alleges that "[i]n the Motion WaMu and Gray Assoc [sic] represents [sic] that Bernegger's property is only worth $195,234.70 . . . ." (Defs.' PFOF ¶ 83.)  In response to written discovery requests asking him to identify any alleged falsehood in the Motion, Mr. Bernegger responded as follows: "The entire document is fraudulent where WaMu is not the owner of the financial instrument note. Documents supporting this were submitted in the Rule 26 disclosure and/or are attached here."  (Decl. of Bryan K. Nowicki, Ex B: Pl.'s Answers to Req. for Interrogs., dated January 5, 2009, at 3).

Mr. Bernegger admitted at his deposition that the "fraud" associated with the Motion is that the movant, i.e., Washington Mutual Bank, F.A., lacked standing to proceed with debt collection against him.  (Defs.' PFOF ¶ 85.)  Although Bernegger appears to attack the amount due as set forth in the Motion, he admitted at his deposition that he does not know, or at least refuses to inform the defendants of, the amount he believes to have been due and owing at that time.  (*Id*. at ¶ 86.)

### d.  Contacts with Bernegger

Mr. Bernegger's allegations regarding inappropriate contact are set forth in paragraph 57 of the complaint, which reads as follows:

> 57. Defendants knew Bernegger was represented by counsel but declined To notify said counsel of new proceedings by them. 15 U.S.C. § 1692c (a)(2). This occurred multiple times by Defendants. WaMu, GrayAssoc, BancS contacted Bernegger through unauthorized parties. 15 U.S.C. § 1692c (b). 15 U.S.C. § 1692k (b)(1). 15 U.S.C. § 1692b (2), (6).

(1st Am. Compl. ¶ 57).

20

In response to written discovery requests, Mr. Bernegger described the factual basis of his claim under this paragraph as follows: "WaMu and Etrade contacted Plaintiff by mail several times while allegedly being represented by Defendants." (Decl. of Bryan K. Nowicki, Ex B: Pl.'s Answers to Req. for Interrogs., dated January 5, 2009, at 4.)

## B. Analysis

### 1. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought. Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

21

if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed. R. Civ. P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality--either admissible documents or attested testimony, such as that found in depositions or in affidavits--demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)) (internal quotation marks omitted).

22

## 2. FDCPA

Mr. Bernegger's claims are under §§ 1692c and 1692e of the FDCPA. Section 1692e of the FDCPA provides, in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10). Mr. Bernegger claims that the defendants violated § 1692e(10) by making false statements in three documents filed with certain courts: (1) the Affidavit filed in the state court foreclosure proceeding; (2) the Property Evaluation filed in the state court foreclosure proceeding; and (3) the Motion filed in the bankruptcy court.

The other provision of the FDCPA that Mr. Bernegger claims defendants violated is § 1692c, the relevant portion of which reads:

(a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt–

. . . .

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

23

15 U.S.C. § 1692c(a)(2). Bernegger claims that certain non-parties, i.e., Washington Mutual Bank, F.A., and E-Trade, violated this provision by contacting him directly. He also claims that the Defendants violated this provision by erroneously mailing notices to him directly at a time when he was represented by counsel.

### a. The Affidavit

Mr. Bernegger alleges that the Affidavit filed in the state court foreclosure action was flawed for either mis-labeling or failing to attach a document that purported to demonstrate the value of his property. Defendants also note that Bernegger has attempted to expand this claim in discovery under a theory that the Affidavit identifies a "false plaintiff."

In defending an FDCPA action, debt collectors may invoke the affirmative defense that the violation was a bona fide error. "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Intentional actions, so long as the debt collector can show the FDCPA violation itself was unintentional, are protected by the bona fide error defense. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005); *see also Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense.").

24

Here, the undisputed facts show that defendants are entitled to the protection of the bona fide error defense. Mr. Bernegger has produced nothing to challenge the defendants' assertion that they did not intentionally violate the FDCPA in submitting the Affidavit. (Defs.' PFOF ¶ 48.) The facts also demonstrate that the alleged deficiencies in the state court filing were a result of bona fide errors, as the reference to an attached "tax bill" was an inadvertent clerical error that Gray's staff failed to catch. (Decl. of Steven E. Zablocki, dated March 23, 2009 at ¶¶ 30, 31.) Mr. Bernegger presents nothing to suggest that Zablocki intentionally omitted or mislabeled an attachment to the Affidavit.

The undisputed facts before me also indicate that the procedures defendants employed were designed to avoid the errors that resulted in alleged violations of the FDCPA. The defendants need not take every conceivable precaution against violating the FDCPA in order to enjoy the bona fide error defense, only reasonable precaution. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more . . ., § 1692k(c) only requires collectors to adopt reasonable procedures."). In *Jenkins v. Heintz*, 124 F.3d 824 (7th Cir. 1997), the court found precautions similar to those Gray implemented here sufficient to meet the standard of the FDCPA:

> The defendants have offered unrebutted evidence of the procedures they followed when preparing to file suit to collect a debt to avoid errors and omissions that could result in an FDCPA violation. These include the publication of an in-house fair debt compliance manual, updated regularly and supplied to each firm employee; training seminars for firm employees collecting consumer debts; and an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act. After suit is filed, the firm assigns an attorney to review all issues relating to a particular deficiency, and stops all collection efforts on a disputed balance before judgment to verify all disputed items with the client.

124 F.3d at 834. Because the defendants employed similar procedures in this case, I conclude that they have shown that they took reasonable precautions. As the record demonstrates that

25

notwithstanding these precautions, defendants Gray and Zablocki made an unintentional error regarding the Affidavit, Gray and Zablocki are entitled to judgment as a matter of law based upon the protection of the bona fide error defense.[5]

### b. The Property Evaluation

Though Mr. Bernegger claims the Property Evaluation was false or deceptive, he admitted in discovery that he did not think the value attributed to the document was erroneous. (Defs.' PFOF ¶ 78.) Instead, Bernegger asserted that the document's failing was that it was created by a puppet master non-party whom he believes was controlling the defendants. But that claim, to the extent it is a claim, is not was not plead and is not before me. Moreover, even if it had been plead it would be dismissed on grounds of claim preclusion. Having failed to challenge the standing of a party to bring suit in the earlier state proceeding, Mr. Bernegger may not use an FDCPA action to litigate the issue here. Accordingly, the claim that the property evaluation was false or defective is dismissed.

---

[5] While the defendants have framed their argument mainly in terms of the bona fide error defense, an argument could be made that the allegedly false statement about which Mr. Bernegger complains would not mislead or deceive the unsophisticated consumer, thus preventing a finding that defendants violated § 1692e(10). The Seventh Circuit has rejected the argument that a technically false statement automatically violates the FDCPA. *See Ruth v. Triumph P'ships*, --- F.3d ----, 2009 WL 2487092, at *7 (7th Cir. Aug. 17, 2009). An FDCPA plaintiff bears the burden of proving that even a false statement would mislead or deceive the unsophisticated consumer. *Id*. The court noted:

> If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA-even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't "false" unless it would confuse the unsophisticated consumer.

*Id*. at *8 (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009). Because I conclude that the defendants enjoy the bona fide error defense, I need not examine whether the allegedly false statement was "false" under the FDCPA's unsophisticated consumer test.

26

### c. The Motion

Mr. Bernegger claims that the Motion filed in the bankruptcy proceedings misrepresented the value of his property. The provision of the Motion with which Bernegger takes issue is:

> 4. That the total amount due to the movant is approximately $195,234.70, which may substantially exceed the encumbered property's value. Accordingly, the property is burdensome or of inconsequential value and benefit to the estate and the trustee should be ordered to abandon the estate's interest, if any, in the property pursuant to Section 554(b) of the Bankruptcy Code.

(Decl. of Jay J. Pitner, Ex. A at 2.) Mr. Bernegger's claim appears to be that this statement was false as his property's value was really more than $195,234.70, and therefore not burdensome or of inconsequential value to the estate.

Though poorly stated, the intended meaning of the document appears to be that the amount owed Washington Mutual and secured by its mortgage, along with the other liens on the property, exceeded its fair market value. According to a title report on the property, other than the primary mortgage held by Washington Mutual Bank, there were four liens on the property held by third parties totaling over $485,000. (Defs.' PFOF ¶ 38.) Bernegger admitted at his deposition that a title report constitutes an "independent valid account" of liens on his property. (*Id*. at ¶ 39.) The value of the property was estimated to be between $521,500 and $736,500. (*Id*. at ¶ 63.) When these other encumbrances of over $485,000 are subtracted from the market value, Mr. Bernegger is hard pressed to argue that the statement that the $195,234.70 owing to Washington Mutual Bank "may substantially exceed" the unencumbered value of his property was false. On these undisputed facts, I therefore find that the Motion's qualified representation that the $195,234.70 then owed on the mortgage "may substantially exceed" such amount was not a false representation for purposes of

27

§ 1692e(10) of the FDCPA. Based on the undisputed facts before me, viewed in a light most favorable to Mr. Bernegger, I conclude Bernegger simply misread the Motion and the contextual meaning of the word "value." As is clear from the use of the term "encumbered" in paragraph 4, the "value" referred to is the net value of the property, *i.e.*, its market value less encumbrances.

Moreover, as the defendants note, Mr. Bernegger had an opportunity to challenge the claim set forth in paragraph 4 of the Motion in bankruptcy court, but elected not to do so. The undisputed facts show that paragraph 4 of the Motion did not contain a false representation for purposes of § 1692e of the FDCPA. Because there is no genuine dispute as to any material fact regarding Mr. Bernegger's claims under § 1692e(10), summary judgment will be entered in favor of defendants.

### d. Improper Contacts under the FDCPA

Plaintiff brings claims under § 1692c in asserting that Gray contacted him through unauthorized parties and that the defendants communicated directly with him rather than his counsel. The defendants contend that as the claim regarding contact through unauthorized parties relates to non-parties directly contacting Mr. Bernegger, the claim is not actionable against the defendants. I agree.

Mr. Bernegger admitted in discovery that the contacts at the heart of his inappropriate contact claims were made by Washington Mutual and E-Trade. (Decl. of Bryan K. Nowicki, dated March 23, 2009, Ex. B: Pl.'s Answers to Req. for Interrogs., dated January 5, 2009, at 4.) Neither entity is a party to this lawsuit; Mr. Bernegger voluntarily dismissed E-Trade, and all claims against Washington Mutual were dismissed for lack of service. (Doc. # 81 at 5, 27-28.) Bernegger's

28

claims regarding alleged contacts by Washington Mutual and E-Trade do not give rise to a claim against the defendants.

The issue that remains is whether defendants are entitled to summary judgment on Mr. Bernegger's claim that they violated § 1692c by contacting him rather than his counsel. I conclude that defendants have successfully demonstrated that the bona fide error defense of the FDCPA applies to this claim of improper contact. Here, the undisputed facts show that the defendants did not intentionally violate the FDCPA, but only mistakenly mailed a motion directly to Mr. Bernegger rather than his attorney. (Decl. of Steven E. Zablocki, March 23, 2009, ¶ 35). Moreover, the facts demonstrate that the defendants employed procedures that were designed to prevent the error that resulted in the alleged violations of the FDCPA. (*Id*. at ¶ 36; Decl. of Lisa Hooper, March 23, 2009, ¶¶ 14-15). As I conclude that no finder of fact could reasonably find the bona fide error defense inapplicable on the claim of improper contact, summary judgment will be entered in favor of defendants on the § 1692c claim.

## III. Defendants' Request for Fees and Costs

Defendants have requested that they be awarded their attorney's fees and costs incurred in defending this action, something the FDCPA does permit a certain category of vindicated defendants.[6] Under the FDCPA, the court may award attorneys' fees to a prevailing defendant upon a finding that the lawsuit "was brought in bad faith and for the purpose of harassment." 15 U.S.C.

---

[6]This is not the first time defendants have invoked § 1692k(a)(3), as they also requested such relief in an earlier motion to dismiss. (Doc. # 25 at 7.) In determining that dismissal of all of Mr. Bernegger's claims at the pleadings stage would be inappropriate, I concluded that an award of attorney's fees was not warranted at the time, though I invited defendants to renew their request in the future should they be able to demonstrate the impropriety of Bernegger's suit as a whole. (Doc. # 81 at 8-9.)

29

§ 1692k(a)(3). The Seventh Circuit has stated, however, that the statute requires that the "entire lawsuit," not just a certain claim, be brought in bad faith and for harassment purposes. *Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769, 775 (7th Cir. 2003). An award is not justified, for example, where a plaintiff prevails on some claims and has colorable arguments on the claims on which he did not prevail. *Id.* The Seventh Circuit has yet to provide a clear standard regarding what constitutes "bad faith" and "for the purpose of harassment" under § 1692k(a)(3).

Although defendants have justifiably taken great exception to Mr. Bernegger's discovery tactics in the course of this litigation, in deciding whether an award under § 1692k(a)(3) is appropriate I must consider whether he *brought* the action in bad faith and to harass. Of course, Mr. Bernegger nowhere admits he brought this litigation in bad faith to harass the defendants, but it is clear from the absence of merit to his allegations and his tactics in the course of discovery that this was his motivation. At no point has Bernegger presented any evidence that any of the alleged FDCPA violations amounted to more than inadvertent clerical errors that played no role in the outcome of either his bankruptcy or foreclosure proceedings. It is clear from plaintiff's conduct in this case, as well as his involvement in another case before the court, *Bernegger v. Morrissette*, Case. No. 08-C-977, 2009 WL 911394, *10 (E.D. Wis. Mar. 31, 2009), of which I may take judicial notice, *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983), that he uses litigation as a weapon against those who have "crossed" him. This includes attorneys who commence foreclosure actions against him and represent his creditors as in this case, as well as probation officers assigned to supervise him as in *Morrissette*. He has expressed a willingness to abuse the judicial process. When counsel for defendants attempted to confer with Mr. Bernegger on some discovery issues, Bernegger said that if the information he was requesting was not provided, he

30

would "just file lawsuit after lawsuit and go on for another three years." (Decl. of Bryan K. Nowicki, dated January 19, 2009, ¶ 5.) An expression such as this indicates the speaker is apparently not averse to bringing actions in federal court for improper purposes.

Mr. Bernegger's discovery practices and filings in this action support the defendants' claim that he brought this pro se lawsuit in bad faith and for harassment purposes. As noted above, all but a portion of plaintiff's FDCPA claims were dismissed after the Order of October 23, 2008, along with all other causes of action, including misrepresentation, unjust enrichment, and mail fraud. Although the scope of the case was substantially limited as a result of the order, Mr. Bernegger's activities were not. Defendants assert that Bernegger's subsequent discovery efforts have demonstrated an intentional disregard for the Court's rulings. I note that plaintiff's actions prompted defendants to move for a protective order and sanctions, which is pending before the Court.

In their motion for a protective order and sanctions, defendants assert that instead of seeking discovery relevant to these three claims, Bernegger has abused the discovery process in a sweeping campaign to investigate alleged improprieties in the mortgage industry, regardless of the fact that these alleged abuses have no relation to the facts of his case. They argue Mr. Bernegger's abuse of the discovery process is evident, among other ways, in his repeated accusations of ethical and criminal investigations and his efforts to obtain other information, such as the way in which the defendant attorneys assessed their fees and the relationship between the defendants, their clients and various non-parties.

Mr. Bernegger has noticed and taken depositions in this case. In his January 12, 2009 deposition of Sandra Martin, a non-party realtor who holds a listing contract for Bernegger's former

31

property, Mr. Bernegger asked questions regarding the relationships between various non-parties in the mortgage industry. In the course of his questioning of Martin, Mr. Bernegger sought information regarding her efforts to sell the property and implied that her efforts violated "the first rule of the realtors' ethics of not being honest . . . ." (Decl. of Bryan K. Nowicki, dated January 19, 2009, Ex. EE, Martin Dep. 12:21-22.) Mr. Bernegger also asked questions regarding whether Martin was aware of criminal investigations by federal and state agencies.

Mr. Bernegger's deposition of defendant Zablocki on January 14, 2009 included questions regarding Zablocki's familiarity with the rules of professional conduct governing attorneys in Wisconsin and when he last had a discussion about legal ethics. (Suppl. Nowicki Decl. Ex. FF, Zablocki Dep. 13:24-14:13.) Bernegger asked Zablocki twice whether he knew the difference between a truth and a lie. (*Id*. at 15:4-19.) He also inquired into the legal fees defendants charged, various investigations involving the defendants and other information, none of which appears relevant to his claims in this matter.

Bernegger's deposition of non-party Abigail O'Dess taken on January 14, 2009, also contained questions about non-parties apparently unconnected with his claims and questions about ethical violations and investigations relating to the defendants. (Suppl. Nowicki Decl. Ex. GG.) As noted above, after this deposition Mr. Bernegger told counsel for defendants he would "just file lawsuit after lawsuit and go on for another three years." (Decl. of Bryan K. Nowicki, dated January 19, 2009, ¶ 5.) When defendants' counsel noted that he would seek a protective order if they could not resolve the discovery issues, Bernegger threatened to file a motion for contempt and for violating the rules of professional conduct. (*Id*.) The next day Bernegger sent an e-mail to counsel

32

and claimed he was violating his duties as an officer of the court and "violating numerous rules of professional conduct." (Decl. of Bryan K. Nowicki, dated January 19, 2009, Ex. M.)

These discovery abuses, taken with Mr. Bernegger's other activities in this case, are consistent with the behavior of a litigant who would bring a case in bad faith and to harass. Bernegger's discovery efforts appear related to nearly every aspect of the defendants' business and personal lives apart from the particular claims at issue in this lawsuit. Moreover, when responding to the defendants discovery efforts, Mr. Bernegger sought to expand his claims to include alleged FDCPA violations that were subject to the very same claim preclusion bar that caused the dismissal of his attorney fee-based FDCPA claims. Bernegger has improperly sought to use this lawsuit to undermine the legitimacy of those conclusive final determinations of other courts.

Mr. Bernegger appears to subscribe to a "scorched earth" litigation strategy, as he demonstrates no hesitance in leveling serious allegations of professional and ethical misconduct against defendants and counsel faced with the unhappy estate of appearing opposite him in a case. Indeed, Bernegger is quick not only to make such allegations regarding counsel in these proceedings, but also with state bodies charged with regulating the legal profession–as if there were nothing wrong with filing professional misconduct grievances against your adversary or his counsel as a form of civil litigation by other means. Though Mr. Bernegger does not claim to be an attorney and is not subject to the rules governing lawyers in Wisconsin, it is worthwhile to note that attorneys that use threats to file disciplinary grievances against other attorneys for an improper purpose, such as to harass, are themselves subject to disciplinary proceedings and sanctions. *See In re Disciplinary Proceedings Against Arthur*, 2005 WI 40, ¶¶ 54-56, 279 Wis. 2d 583, ¶¶ 54-56, 694 N.W.2d 910, ¶¶ 54-56.

33

It is difficult to conceive of a more clear expression of intent to harass than Mr. Bernegger's statement that he would "just file lawsuit after lawsuit and go on for another three years." Because I find that plaintiff brought this lawsuit in bad faith and with the purpose to harass the defendants, I will award the defendants their attorneys' fees and costs to compensate them for Mr. Bernegger's misuse of the Courts and the FDCPA.

## IV. Other Motions

On June 11, 2009, Bernegger filed a document entitled "Plaintiff's Addendum Against Motion for Summary Judgment." (Doc. # 167.) On June 16, 2009, defendants moved to strike this document from the record. (Doc. # 168.) As the document is untimely under the briefing schedule as provided in Civil Local Rules 7.1 and 56.2, and it contains matter that is solely redundant, immaterial, impertinent and scandalous, the motion to strike will be granted.

On July 17, 2009, Mr. Bernegger filed an expedited non-dispositive motion "to reinstate all claims that were denied by the invocation of the case law [sic] *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 550 U.S. 544, 167 L.Ed.2d 929 (2007)." (Doc. # 180 at 1.) The motion will be denied, as Bernegger essentially brings an untimely request that the Court reconsider its order of October 23, 2008 dismissing many of his claims. His argument that the Court misapplied *Twombly* is unconvincing and does not persuasively demonstrate that the Court should reinstate his previously-dismissed claims.

On September 14, 2009, Mr. Bernegger filed an expedited non-dispositive motion requesting a hearing on all of the motions pending in this case. (Doc. # 186.) Because this decision and order disposes of all remaining motions of this case, the motion will be denied as moot.

34

# CONCLUSION

This case is a regrettable example of how the FDCPA, a piece of legislation Congress intended to shield consumers from abusive debt collection practices, 15 U.S.C. § 1692(e), can be a sword in the hands of a determined litigant willing to "just file lawsuit after lawsuit," regardless of the merits of the claims. Mr. Bernegger gets no pass for his abuse of the process simply because he is pro se, as proceeding without counsel is not permission to bring claims in bad faith. Because I conclude that this action as a whole was taken in bad faith, Bernegger will be ordered to pay defendants' costs and fees under § 1692k(a)(3). Defendants will be ordered to submit an accounting of their costs and fees in defending this action. Defendants' motion for summary judgment will be granted, as there is no dispute as to any material fact on Mr. Bernegger's FDCPA claims.

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment [Doc. # 149] is **GRANTED** and all of plaintiff's claims are dismissed.

**IT IS FURTHER ORDERED** that defendants' motion for a protective order and sanctions [Doc. # 122] is **DENIED** as moot.

**IT IS ALSO ORDERED** that Mr. Bernegger's motion to extend discovery 90 days, stay consideration of the defendants' motion for summary judgment, and for leave to file an amended complaint [Doc. # 157] is **DENIED**, as is his June 17, 2009 motion to amend the complaint [Doc. # 170].

**IT IS ALSO ORDERED** that defendant's motion to strike Bernegger's document entitled "Plaintiff's Addendum Against Motion for Summary Judgment" [Doc. # 168] is **GRANTED.**

35

**IT IS ALSO ORDERED** that Mr. Bernegger's motion for recusal [Doc. # 178] is **DENIED.**

**IT IS ALSO ORDERED** that Mr. Bernegger's motion to reinstate his claims [Doc. # 180] is **DENIED.**

**IT IS ALSO ORDERED** that Mr. Bernegger's motion for a hearing on all motions pending in this matter [Doc. # 186] is **DENIED** as moot.

**IT IS ALSO ORDERED** that defendants are granted ten (10) days of the date of this order to file evidence of their attorney's fees and costs in defending this action.  Mr. Bernegger may file a response within ten (10) days of the entry of defendants' filing on the docket.

Dated this ___24th____ day of September, 2009.


  s/ William C. Griesbach
William C. Griesbach
United States District Judge